# EXHIBIT A

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement and Release ("Agreement") is made by and between, on the one hand, George Yassa ("Yassa"), Eric Arnicar ("Arnicar"), David Bates ("Bates"), Marc Blazejak ("Blazejak"), Daniel Dausch ("Dausch"), James Tomassoni ("Tomassoni"), and Steven Webster ("Webster") (hereinafter Yassa, Arnicar, Bates, Blazejak, Dausch, Tomassoni, and Webster are sometimes referred to individually and collectively as a "Plaintiff" and "Plaintiffs," respectively) and, on the other hand, EM Consulting Group, Inc. (hereinafter "Defendant") (hereinafter Plaintiffs and Defendant are sometimes referred to individually and collectively as a "Party" and the "Parties," respectively).

**WHEREAS**, Plaintiffs are former employees of Defendant;

**WHEREAS**, Plaintiffs have initiated against Defendant, in the United States District Court for the District of Maryland (the "Federal Court"), that certain lawsuit captioned *Yassa, et al. v. E.M. Consulting Group, Inc.*, Case No. 1:17-cv-00593-JKB (the "Overtime Lawsuit"), alleging, among other things, that Defendant failed to pay them in accordance with applicable law for certain hours worked;

**WHEREAS**, Defendant has denied the allegations of wrongdoing that have been made against it in the Overtime Lawsuit and contends that it properly paid Plaintiffs in accordance with applicable law for all hours worked;

**WHEREAS,** on or about April 13, 2017, Defendant initiated against Dausch, in the Circuit Court for Baltimore County, that certain lawsuit captioned E.M. Consulting Group, Inc. v. Dausch, Case No. 03-C-17003712 (the "Dausch Lawsuit");

**WHEREAS,** on or about August 28, 2017, Defendant initiated against Yassa, in the Circuit Court for Baltimore County, that certain lawsuit captioned E.M. Consulting Group, Inc. v. Yass, Case No. 13-C-17008434 (the "Yassa Lawsuit");

**WHEREAS,** Dausch and Yassa deny the allegations of wrongdoing that have been made against them in the Dausch Lawsuit and the Yassa Lawsuit, respectively;

**WHEREAS,** the Parties desire to enter into this Agreement to resolve all claims, controversies, or disputes relating to or arising out of Plaintiffs' employment with Defendant, including without limitations all claims, controversies, or disputes asserted or referenced in the Overtime Lawsuit, the Dausch Lawsuit, and the Yassa Lawsuit and all other claims that Defendant may have against any or all of the Plaintiffs, and that any or all of the Plaintiffs may have against Defendant, relating to or arising out of said employment; and

**WHEREAS,** the terms of this Agreement are the product of mutual negotiation and compromise between Plaintiffs and Defendant, and

**NOW, THEREFORE** in consideration of the foregoing Recitals, the representations, warranties, and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties do hereby agree as follows:

1.    ***Recitals; Submission for Court Approval.***    The foregoing Recitals are incorporated by reference into, and are a substantive part of this Agreement. This Agreement, once signed by all of the Parties, shall be Exhibit A to the Memorandum of Law in Support of Joint Motion for Approval of Settlement which the Parties are submitting to the Federal Court in the Overtime Lawsuit.

2.    ***Defendant's Denial of Wrongdoing and Liability, Etc.***    Defendant (a) denies all of the claims asserted in the Overtime Lawsuit, (b) denies that it is liable to Plaintiffs for any amount, and (c) makes no concessions or admissions of wrongdoing or liability of any kind whatsoever. Neither the existence of this Agreement nor any of the provisions of this Agreement may be construed or used as an admission or evidence of the validity of any claim or allegation or of any act, omission, liability, or wrongdoing on the part of Defendant in any action or proceeding of any kind whatsoever, except to enforce this Agreement. The existence of Agreement and the provisions of this Agreement shall be inadmissible in any action or proceeding or any kind whatsoever, except as necessary to enforce this Agreement.

3.    ***Monetary Consideration.***

a.    ***Payments to Plaintiffs (Non-Attorney's Fees).***

i.    Subject to subsections (a)(ii), (a)(iii), and (a)(iv) below, Defendant shall make payments to each Plaintiff in the amounts set forth opposite such Plaintiff's name in columns (x) and (y) of the following table (the "Payment Table"):

| Plaintiff | (x) | (y) |
|---|---|---|
| George Yassa | $10,000.00 | $10,000.00 |
| Eric Arnicar | $5,000.00 | $5,000.00 |
| David Bates | $10,000.00 | $10,000.00 |
| Marc Blazejak | $5,000.00 | $5,000.00 |
| Daniel Dausch | $2,500.00 | $2,500.00 |
| James Tomassoni | $1,000.00 | $1,000.00 |
| Steven Webster | $15,000.00 | $15,000.00 |

ii.    The amount/payment set forth opposite a Plaintiff's name in column (x) of the Payment Table shall be deemed wages subject to applicable payroll withholdings/deductions and Defendant shall issue to such Plaintiff a Form W2 with respect to such payment.

iii.    The amount/payment set forth opposite a Plaintiff's name in column (y) of the Payment Table shall be deemed non-wage damages and Defendant shall issue to such Plaintiff a Form 1099 with respect to such payment.

iv.    Defendant shall make each payment referenced in this section 3.a by delivering to George Swegman, Esquire, The Law Offices of Peter T. Nicholl, 36 South Charles Street, Suite 1700, Baltimore, Maryland 21201, within ten (10) days of the date of entry by the United States District Court for the District of Maryland of an order approving this Agreement (hereafter said date is referred to as the "Approval Date"), a check, payable to the order of the Plaintiff to whom such payment relates, for the payment amount (minus, in the case of each

payment referenced in column (x) of the Payment Table, the amount of deductions required by applicable law).

     ***b.    Attorney's Fees.***    Defendant shall make to Plaintiffs' counsel a payment in the amount of Seventy Thousand Dollars ($70,000.00)(hereinafter said amount is referred to as the "Fees Amount"). Said payment shall be deemed attorney's fees relating to Plaintiffs' Counsel's representation of Plaintiffs in the Overtime Lawsuit. Defendant shall make such payment by delivering to Plaintiff's counsel, within ten (10) days of the Approval Date, a check, payable to the order of The Law Offices of Peter T. Nicholl, for the Fees Amount; provided, however, that Plaintiffs shall, through their counsel, provide to Defendant's counsel, on or prior to the fifth (5th) day following the Approval Date, a Form W-9 relating to Plaintiff's counsel.

     ***4.    Taxes; Indemnification.***    Defendant makes no representations or warranties with respect to the tax consequences of the payments required by section 3 of this Agreement. Each Plaintiff understands and agrees that he is responsible for timely payment of, and represents and warrants to Defendant that he will timely pay, all local, state, and/or federal taxes or monetary obligations arising from the payment of the amounts referenced in column (y) of the Payment Table and shall defend, indemnify, and hold harmless Defendant from and against (a) any claims by any governmental or taxing authority that interest or penalties are due or owed by virtue of the fact that the amounts/payments referenced in column (y) of the Payment Table have been characterized as non-wages or the fact that Defendant has not withheld any amounts from the amounts/payments referenced in said column (y) and (b) any such interest or penalties that may be charged, assessed, or levied by any such authority.

     ***5.    Dismissal of Lawsuits With Prejudice.***

     a.    Within five (5) business days of the Approval Date, Plaintiffs shall dismiss the Overtime Lawsuit with prejudice.

     b.    Within five (5) business days of the Approval Date, Defendant shall dismiss the Dausch Lawsuit with prejudice.

     c.    Within five (5) business days of the Approval Date, Defendant shall dismiss the Yassa Lawsuit with prejudice.

     ***6.    No Other Entitlement.***    Each Plaintiff acknowledges and agrees that Defendant has no obligation to make, pay, or provide to him any compensation, payment, benefit, or consideration, except as expressly set forth in this Agreement.

     ***7.    Release by Plaintiffs.***  Except for Defendant's obligations under this Agreement, each Plaintiff, on behalf of himself and his representatives, agents, brokers, employees, attorneys, representatives, predecessors, heirs, successors, and assigns, irrevocably and unconditionally releases, exonerates, and forever discharges Defendant and each of Defendant's representatives, agents, brokers, employees, officers (including without limitation Erik Nachbahr), directors, shareholders, attorneys, insurers, heirs, successors, and assigns, of and from (a) any and all obligations or liabilities, known or unknown, discovered or undiscovered, foreseen, or unforeseen, which Defendant has or may have to Plaintiff, by reason of, arising from, or related to such Plaintiff's employment with Defendant, and (b) any and all claims

(including without limitation any and all claims under the Fair Labor Standards Act, and the Maryland Wage and Hour Law, the Maryland Wage Payment and any and all claims for monetary damages, non-economic damages, wages, overtime pay, termination pay, attorneys fees, costs, or any other matter) whatsoever, known or unknown, discovered or undiscovered, foreseen, or unforeseen, in law or in equity, which such Plaintiff had, now has, or may have in the future by reason of, arising from, or related to such Plaintiff's employment with Defendant.

**8.    _Release by Defendant._** Except for each Plaintiff's obligations under this Agreement and except for any obligations which any Plaintiff may have to Defendant under an agreement attached hereto as Exhibit 1, Defendant, on behalf of itself and its legal representatives, agents, brokers, employees, attorneys, representatives, predecessors, heirs, successors, and assigns, irrevocably and unconditionally, releases, exonerates, and forever discharges each Plaintiff and each Plaintiff's representatives, agents,  heirs, successors, and assigns, from (a) any and all obligations or liabilities, known or unknown, discovered or undiscovered, foreseen, or unforeseen, which such Plaintiff has or may have to Defendant, by reason of, arising from, or related to such Plaintiff's employment with Defendant, and (b) any and all claims (including without limitation any claims under the Fair Labor Standards Act, the Maryland Wage and Hour Law, and the Maryland Wage Payment and Collection Law and any and all claims for monetary damages, non-economic damages, wages, overtime pay, termination pay, attorneys fees, costs, or any other matter) whatsoever, known or unknown, discovered or undiscovered, foreseen, or unforeseen, in law or in equity, which Defendant had, now has, or may have in the future by reason of, arising from, or related to such Plaintiff's employment with Defendant.

**9.    _Certain Representations, Warranties, and Agreements._**    Each Plaintiff represents, warrants, and agrees that:

a.    He has, personally or through his attorneys, fully investigated, to his full satisfaction, all facts surrounding the various claims, controversies, and disputes that are asserted in the Overtime Lawsuit.

b.    He has not sold, assigned, transferred, conveyed, or otherwise disposed of any claims, judgments, demands, obligations, or causes of action referenced in this Agreement.

c.    He understands that he would not receive any of the payments or benefits which he will receive under the terms of this Agreement, but for the execution of this Agreement and fulfillment of the terms and conditions of this Agreement.

d.    There exists between Plaintiffs and Defendant a good faith, genuine, and bona fide dispute as to, among other things, the number of hours worked by Plaintiffs for Defendant and whether Defendant has paid Plaintiff in accordance with applicable law for all hours worked.

e.    He has read this Agreement, he has been advised by counsel of his choice regarding the advisability of entering into this Agreement and the meaning of the terms and conditions of this Agreement, that he fully understands and appreciates the meaning of said terms and conditions, that this Agreement is a voluntary, full, and final compromise, settlement, and release of all claims, controversies, and disputes referenced in the Recitals, and that, except

as set forth in this Agreement, he is not entitled to any other payments, compensation, or benefits relating to or arising out of his employment with Defendant.

**10.** **_No Future Employment with Defendant._**    Each Plaintiff agrees not to apply for employment with Defendant in the future.

**11.** **_No Contra Preferendum._** Plaintiffs, Defendant, and counsel for Plaintiffs and Defendant participated jointly in the drafting of this Agreement and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

**12.** **_Governing Law and Interpretation._** This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland, exclusive of its conflicts-of-laws rules.

**13.** **_Amendment._** This Agreement may not be modified, altered, or changed except upon express written consent of all Parties wherein specific reference is made to this Agreement.

**14.** **_Entire Agreement; Binding Effect._** This Agreement sets forth the entire agreement between the Parties hereto, and, except as set forth herein, fully supersedes any prior agreements or understandings between the Parties. This Agreement shall be binding upon and shall inure to the benefit of the Parties, their respective heirs, legatees, legal and personal representatives, successors, and assigns.

**15.** **_Severability._**    Each provision of this Agreement shall be considered severable. If any provision contained herein is held to be void, illegal, or unenforceable, such illegality or unenforceability shall not affect any of the other provisions herein, and the remaining provisions of this Agreement will continue to be given full force and effect, unless the absence of that provision materially alters the rights and obligations of the Parties.

**16.** **_Section Headings._**    Section headings are used herein for convenience of reference only and shall not affect the meaning of any provision of this Agreement.

**17.** **_Counterparts._** The Parties agree that this document can be signed in counterparts and that a facsimile or portable document file (.pdf) of a signature to this Agreement shall be given the same force and effect as an original signature.

**IN WITNESS WHEREOF**, the Parties hereto knowingly and voluntarily execute this Agreement as of the dates set forth below.

**THIS IS A RELEASE AND WAIVER OF CLAIMS. YOU ARE ADVISED TO READ AND CONSULT WITH LEGAL COUNSEL PRIOR TO SIGNING.**

**Defendant**

EM Consulting Group, Inc.

By: _____

Erik Nachbahr, President

Title: _Presiden t_

Date: 1/4/2018

**Plaintiffs**

_____

George Yassa

Date:

_____

Eric Arnicar

Date:

_____

David Bates

Date:

_____

Marc Blazejak

Date:

_____

Daniel Dausch

Date:

_____

James Tomassoni

Date:

_____

Steven Webster

Date:

**Defendant**

EM Consulting Group, Inc.

By: _____
     Erik Nachbahr, President

Title: _____

Date:

**Plaintiffs**

_____
George Yassa

Date: 12/24/2017

_____
Eric Arnicar

Date:

_____
David Bates

Date:

_____
Marc Blazejak

Date:

_____
Daniel Dausch

Date:

_____
James Tomassoni

Date:

_____
Steven Webster

Date:

**Defendant**

EM Consulting Group, Inc.

By: _____
     Erik Nachbahr, President

Title: _____

Date: _____

**Plaintiffs**

_____
George Yassa

Date: _____

_____
Eric Amicar

Date: 12/20/2017

_____
David Bates

Date: _____

_____
Marc Blazejak

Date: _____

_____
Daniel Dausch

Date: _____

_____
James Tomassoni

Date: _____

_____
Steven Webster

Date: _____

**Defendant**                                      **Plaintiffs**

EM Consulting Group, Inc.

By: _____              _____
    Erik Nachbahr, President                  George Yassa

                                              Date:

Title: _____

                                              _____
                                              Eric Arnicar
Date:
                                              Date:

                                              David Bates

                                              David Bates

                                              Date: 12/30/17

                                              _____
                                              Marc Blazejak

                                              Date:

                                              _____
                                              Daniel Dausch

                                              Date:

                                              _____
                                              James Tomassoni

                                              Date:

                                              _____
                                              Steven Webster

                                              Date:

**Defendant**

EM Consulting Group, Inc.

By: _____
    Erik Nachbahr, President

Title: _____

Date: _____

**Plaintiffs**

_____
George Yassa

Date:

_____
Eric Arnicar

Date:

_____
David Bates

Date:

_____
Marc Blazejak

Date: 12 - 19 - 17

_____
Daniel Dausch

Date:

_____
James Tomassoni

Date:

_____
Steven Webster

Date:

**Defendant**

EM Consulting Group, Inc.

By: _____
       Erik Nachbahr, President

Title: _____

Date:

**Plaintiffs**

_____
George Yassa

Date:

_____
Eric Arnicar

Date:

_____
David Bates

Date:

_____
Marc Blazejak

Date:

_____
Daniel Dausch

Date:  12/19/17

_____
James Tomassoni

Date:

_____
Steven Webster

Date:

**Defendant**

EM Consulting Group, Inc.

By: _____
    Erik Nachbahr, President

Title: _____

Date:

**Plaintiffs**

_____
George Yassa

Date:

_____
Eric Arnicar

Date:

_____
David Bates

Date:

_____
Marc Blazejak

Date:

_____
Daniel Dausch

Date:

_____
Jason Tomassoni

Date: 1-4-18

_____
Steven Webster

Date:

**Defendant**

EM Consulting Group, Inc.

By: _____
    Erik Nachbahr, President

Title: _____

Date:

**Plaintiffs**

_____
George Yassa

Date:

_____
Eric Arnicar

Date:

_____
David Bates

Date:

_____
Marc Blazejak

Date:

_____
Daniel Dausch

Date:

_____
James Tomassoni

Date:

_____
Steven Webster

Date: 12/20/2017

## AGREEMENT

In consideration of being provided employment and/or continued employment by EM Consulting Group, Inc., trading as Helion Automotive Technologies (hereafter "Employer"), Eric Reviche (hereafter "Employee") agrees as follows:

**1.     Definitions.**

**a.     Person.**

The term "person," as used in this Agreement, shall mean any individual, any government entity, any business entity (including without limitation any corporation, partnership, joint venture, or limited liability company), and any other entity.

**b.     Competitive Products or Services.**

The term "competitive products or services" shall mean (i) technical support services for computer or information technology systems and/or (ii) services or products which are the same as or similar to products or services offered by Employer at the time of execution of this Agreement or at any time during Employee's employment with Employer.

**c.     Competitive Business.**

The term "competitive business" shall mean any business which offers or sells competitive products or services.

**d.     Employer-Related Contact.**

The term "Employer-related contact" shall mean any client or customer of Employer or other person with whom Employee had or has had personal contact, as an employee of Employer, in connection with performance of services or attempts to sell products or services.

**2.     Confidential Information.**

**a.     Definition.**

The following shall be considered Confidential Information:

        (i)     All information relating to each client, customer, vendor, licensor, licensee, or party transacting business with Employer (such as, but not limited to, information relating to business affairs, finances, properties, methods of operation, hardware or software requirements, needs for technical support services or other products or services, and other data and material).

        (ii)     All information relating to each record, file, document, memorandum, software diagram, flowchart, product or service plan, financial statement, report, price list (for services and/or products), marketing and/or business strategy/plan, client/customer list, list of prospective clients/customers, contact list, or proposal or quotation procedure relating to the business of Employer.

        (iii)     All information relating to research owned or produced by Employer or any client, customer, supplier, or business partner of Employer.

EXHIBIT

**1**

tabbies

(iv)    All information relating to each invention, trade secret, work of authorship, development, design, device, or activity that relates in any manner to Employer's business.

(v)    All information with which Employee may become familiar as an employee of Employer.

**b.    Non-disclosure.**

Except to the extent necessary to perform the duties of employment with Employer, Employee shall not, at any time during or after Employee's employment with Employer, use or disclose, to any person, any Confidential Information, or permit any person to examine and/or make copies of any document or material which contains or is derived from Confidential Information. Employee shall promptly advise Employer in writing if Employee learns of any unauthorized use or disclosure of Confidential Information by any current or former employee of Employer or any other person.

**c.    Return of Confidential Information, Etc..**

Upon Employer's request, and in any event upon termination of employment, Employee shall turn over to Employer all documents, papers, and other material in Employee's possession, custody, or control which may contain or be derived from Confidential Information, together with all documents, materials, notes, or other work product relating to Employer.

**3.    Non-competition, Non-solicitation, Etc.**

Employee agrees that, during Employee's employment with Employer, Employee shall not, directly or indirectly, as an employee, representative, salesperson, owner, independent contractor, or in any other capacity, participate in, work for, act for or in behalf of, or have any direct or indirect interest in, any competitive business.

Employee further agrees that, during Employee's employment and for a period of eighteen (18) months following termination of said employment (and regardless of the reason for termination of said employment), Employee shall not, at any time, directly or indirectly, as an employee, representative, salesperson, owner, independent contractor, or in any other capacity:

(i)    Solicit for employment (as an employee, independent contract, representative, or agent), with or by some person other than Employer, any person who has been an employee or representative of Employer at any time during the eighteen (18) months preceding and/or the eighteen (18) months following said termination.

(ii)    Solicit, in connection with attempts to sell competitive products or services, any person that is an Employer-related contact or has purchased products or services from Employer at any time during the eighteen (18) months preceding and/or the eighteen (18) months following said termination.

(iii)    Solicit, in connection with attempts to sell competitive products or services, any person to whom Employer has attempted to sell products or services during the eighteen (18) months preceding said termination.

(iv)    Sell or participate in efforts to sell competitive products or services to any person that is an Employer-related contact or has purchased products or services from Employer within the eighteen (18)

months preceding and/or the eighteen (18) months following said termination.

(v)     Accept employment with, or perform work for, any person that is an Employer-related contact or that, as a client or customer of Employer or in any other capacity, has purchased products or services from Employer at any time during the eighteen (18) months preceding or the eighteen (18) months following said termination, if such employment or work involves or would involve performance of technical support services for any computer or information technology system and/or providing services which are the same as or similar to services offered by Employer at the time of execution of this Agreement or at any time during Employee's employment.

(vi)     Attempt to induce any vendor or supplier of Employer to discontinue, reduce, or restrict (in size, scope, or volume), its business relationship with Employer.

Employee also agrees that, during the eighteen (18) months following termination of Employee's employment (and regardless of the reason for termination of said employment), Employee shall, prior to either entering into any agreement to participate in, work for, act for or in behalf of, or acquire or have any direct or indirect interest in, any competitive business and/or becoming an owner of any competitive business or other business, (i) inform Employer of Employee's plans to enter into such agreement and/or become an owner of said business, as the case may be, and (ii) communicate to the management of said business the existence and terms of this Agreement.

Employee also agrees that all of the eighteen (18) month periods referenced in this section 3 shall be extended by any amount of time that Employee is in violation of any portion of this section 3.

## 4.     Assignment of Rights.

Employee shall have no proprietary interest in work product developed by Employee during the course of Employee's employment with Employer and Employee agrees that such work product is work made for hire and that Employer shall have all proprietary rights in such work product, including without limitation all patent, copyright, and trade secret rights inherent therein and appurtenant thereto. Employee hereby assigns and agrees to assign to Employer and its successors, assigns, or nominees all right, title, and interest of Employee in such work product and any materials (including without limitation developments, designs, inventions, improvements, trade secrets, trademarks, algorithms, computer routines, programs, copyrightable subject matter, or proprietary information) which Employee may make or conceive, solely or jointly, (a) during the course of Employee's employment with Employer, (b) using time, materials, facilities, or resources of Employer, or (c) based on a suggestion or task given or assigned to Employee in the course of Employee's employment with Employer. Employee shall execute and deliver all such instruments or papers (including without limitation applications for issuances, renewals, extensions, or reissuances of patents, trademark registrations, or copyright registrations) as may be necessary to vest title to such work product and materials in Employer, its successors, assigns, or nominees.

## 5.     General Provisions.

## a.     Reasonableness of Agreement.

Employee agrees that the covenants contained herein are necessary for the protection of Employer's legitimate business interests and are reasonable in scope and content, and further agrees that Employee's experience and capabilities are such that, in the event that Employee's employment with Employer terminates, Employee will be able to earn a livelihood without breaching the terms of this Agreement.

**b.    No Waiver.**

The failure of Employer to enforce at any time or for any period of time any provision of this Agreement shall not be construed as a waiver of such provision or of the right of Employer thereafter to enforce such provision.

**c.    Entire Contract.**

This Agreement constitutes the entire contract between Employer and Employee with respect to the subject matter hereof and supersedes all prior agreements between Employer and Employee, whether oral or written, with respect to the subject matter hereof. No change, modification, or amendment of this Agreement shall be of any effect unless signed by the President or Vice President of Employer.

**d.    Governing Law.**

This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of Maryland, without regard to that State's conflicts-of-laws rules.

**e.    Severability.**

Employee agrees that the provisions of this Agreement are fair and reasonable in light of all of the facts and circumstances of the relationship between Employee and Employer. Employee agrees that, in the event a court should decline to enforce part or all of any provision of this Agreement, that provision shall be deemed to be modified to restrict Employee's competition or other conduct, as the case may be, to the maximum extent which the court shall find enforceable and legally permissible.

**f.    No Right of Setoff.**

The provisions of this Agreement shall be enforceable notwithstanding the existence of any claim of Employee against Employer, whether predicated on this Agreement or otherwise. In the event that Employer asserts a claim against Employee arising out of this Agreement, Employee shall have no right of setoff and/or recoupment based on any claim Employee may assert or wish to assert against Employer.

**g.    Breach or Threatened Breach.**

Employee's obligations under this Agreement shall survive the termination of Employee's employment with Employer. Employee agrees that any breach or threatened breach of the provisions of any part of this Agreement will cause irreparable injury and incalculable harm to Employer, and Employer shall, accordingly, be entitled to injunctive and other equitable relief for such breach or threatened breach, and/or to prevent a breach or threatened breach. Employee further agrees that resort by Employer to such injunctive or other equitable relief shall not be deemed a waiver of or limitation on any other right or remedy which Employer may have with respect to such breach or threatened breach, at law or in equity (including the right to seek and recover damages). Employee also agrees that, if Employee shall violate or breach any of the provisions of this Agreement, Employer shall be entitled to an accounting and repayment of all profits and compensation, commissions, or benefits which Employee directly or indirectly has realized and/or may realize as a result of, growing out of, or in connection with any such violation or breach and to recover damages resulting from said violation or breach; such remedy shall be in addition to and not in limitation of any injunctive or other rights or remedies to which Employer is or may be entitled at law or in equity. In the event that Employer decides to exercise rights under this Agreement, Employee shall be responsible for (and Employer shall be entitled to recover from Employee) any and all expenses incurred by Employer in enforcing such rights, including court costs, expert witness fees, and reasonable attorneys fees.

**h.      Preservation of Common Law Duties.**

Nothing in this Agreement shall limit, reduce, or waive any duties which Employee would or may owe to Employer under the common law.

**i.      Employer's Successors and Assigns.**

This Agreement shall inure to the benefit of Employer's and its successors and assigns.

**j.      "At-will" Employment.**

Employee understands and agrees that Employee's employment with Employer is "at-will," and that Employer or Employee shall have the right to terminate Employee's employment at any time, with or without cause, for any reason or for no reason.

*I HAVE READ THE PROVISIONS OF THIS AGREEMENT AND, IN FULL UNDERSTANDING OF THEM, INDICATE MY ASSENT TO THIS AGREEMENT BY MY SIGNATURE BELOW.*

8/30/2011
_____
Date

_____
Employee's Signature

Eric Renicar
_____
Employee's Printed Name

## AGREEMENT

In consideration of being provided employment and/or continued employment by EM Consulting Group, Inc., trading as Helion Automotive Technologies (hereafter "Employer"), *David   Bates* (hereafter "Employee") agrees as follows:

1.    **Definitions.**

a.    **Person.**

The term "person," as used in this Agreement, shall mean any individual, any government entity, any business entity (including without limitation any corporation, partnership, joint venture, or limited liability company), and any other entity.

b.    **Competitive Products or Services.**

The term "competitive products or services" shall mean (i) technical support services for computer or information technology systems and/or (ii) services or products which are the same as or similar to products or services offered by Employer at the time of execution of this Agreement or at any time during Employee's employment with Employer.

c.    **Competitive Business.**

The term "competitive business" shall mean any business which offers or sells competitive products or services.

d.    **Employer-Related Contact.**

The term "Employer-related contact" shall mean any client or customer of Employer or other person with whom Employee had or has had personal contact, as an employee of Employer, in connection with performance of services or attempts to sell products or services.

2.    **Confidential Information.**

a.    **Definition.**

The following shall be considered Confidential Information:

(i)    All information relating to each client, customer, vendor, licensor, licensee, or party transacting business with Employer (such as, but not limited to, information relating to business affairs, finances, properties, methods of operation, hardware or software requirements, needs for technical support services or other products or services, and other data and material).

(ii)    All information relating to each record, file, document, memorandum, software diagram, flowchart, product or service plan, financial statement, report, price list (for services and/or products), marketing and/or business strategy/plan, client/customer list, list of prospective clients/customers, contact list, or proposal or quotation procedure relating to the business of Employer.

(iii)    All information relating to research owned or produced by Employer or any client, customer, supplier, or business partner of Employer.

(iv)    All information relating to each invention, trade secret, work of authorship, development, design, device, or activity that relates in any manner to Employer's business.

(v)    All information with which Employee may become familiar as an employee of Employer.

**b.    Non-disclosure.**

Except to the extent necessary to perform the duties of employment with Employer, Employee shall not, at any time during or after Employee's employment with Employer, use or disclose, to any person, any Confidential Information, or permit any person to examine and/or make copies of any document or material which contains or is derived from Confidential Information. Employee shall promptly advise Employer in writing if Employee learns of any unauthorized use or disclosure of Confidential Information by any current or former employee of Employer or any other person.

**c.    Return of Confidential Information, Etc..**

Upon Employer's request, and in any event upon termination of employment, Employee shall turn over to Employer all documents, papers, and other material in Employee's possession, custody, or control which may contain or be derived from Confidential Information, together with all documents, materials, notes, or other work product relating to Employer.

**3.    Non-competition, Non-solicitation, Etc.**

Employee agrees that, during Employee's employment with Employer, Employee shall not, directly or indirectly, as an employee, representative, salesperson, owner, independent contractor, or in any other capacity, participate in, work for, act for or in behalf of, or have any direct or indirect interest in, any competitive business.

Employee further agrees that, during Employee's employment and for a period of eighteen (18) months following termination of said employment (and regardless of the reason for termination of said employment), Employee shall not, at any time, directly or indirectly, as an employee, representative, salesperson, owner, independent contractor, or in any other capacity:

(i)    Solicit for employment (as an employee, independent contract, representative, or agent), with or by some person other than Employer, any person who has been an employee or representative of Employer at any time during the eighteen (18) months preceding and/or the eighteen (18) months following said termination.

(ii)    Solicit, in connection with attempts to sell competitive products or services, any person that is an Employer-related contact or has purchased products or services from Employer at any time during the eighteen (18) months preceding and/or the eighteen (18) months following said termination.

(iii)    Solicit, in connection with attempts to sell competitive products or services, any person to whom Employer has attempted to sell products or services during the eighteen (18) months preceding said termination.

(iv)    Sell or participate in efforts to sell competitive products or services to any person that is an Employer-related contact or has purchased products or services from Employer within the eighteen (18)

months preceding and/or the eighteen (1 ) months following said termination.

(v)     Accept employment with, or perform work for, any person that is an Employer-related contact or that, as a client or customer of Employer or in any other capacity, has purchased products or services from Employer at any time during the eighteen (1 ) months preceding or the eighteen (1 ) months following said termination, if such employment or work involves or would involve performance of technical support services for any computer or information technology system and/or providing services which are the same as or similar to services offered by Employer at the time of execution of this Agreement or at any time during Employee's employment.

(vi)    Attempt to induce any vendor or supplier of Employer to discontinue, reduce, or restrict (in size, scope, or volume), its business relationship with Employer.

Employee also agrees that, during the eighteen (1 ) months following termination of Employee's employment (and regardless of the reason for termination of said employment), Employee shall, prior to either entering into any agreement to participate in, work for, act for or in behalf of, or acquire or have any direct or indirect interest in, any competitive business and/or becoming an owner of any competitive business or other business, (i) inform Employer of Employee's plans to enter into such agreement and/or become an owner of said business, as the case may be, and (ii) communicate to the management of said business the existence and terms of this Agreement.

Employee also agrees that all of the eighteen (1 ) month periods referenced in this section 3 shall be extended by any amount of time that Employee is in violation of any portion of this section 3.

4.      **Assignment of Rights.**

Employee shall have no proprietary interest in work product developed by Employee during the course of Employee's employment with Employer and Employee agrees that such work product is work made for hire and that Employer shall have all proprietary rights in such work product, including without limitation all patent, copyright, and trade secret rights inherent therein and appurtenant thereto. Employee hereby assigns and agrees to assign to Employer and its successors, assigns, or nominees all right, title, and interest of Employee in such work product and any materials (including without limitation developments, designs, inventions, improvements, trade secrets, trademarks, algorithms, computer routines, programs, copyrightable subject matter, or proprietary information) which Employee may make or conceive, solely or jointly, (a) during the course of Employee's employment with Employer, (b) using time, materials, facilities, or resources of Employer, or (c) based on a suggestion or task given or assigned to Employee in the course of Employee's employment with Employer. Employee shall execute and deliver all such instruments or papers (including without limitation applications for issuances, renewals, extensions, or reissuances of patents, trademark registrations, or copyright registrations) as may be necessary to vest title to such work product and materials in Employer, its successors, assigns, or nominees.

5.      **General Provisions.**

a.      **Reasonableness of Agreement.**

Employee agrees that the covenants contained herein are necessary for the protection of Employer's legitimate business interests and are reasonable in scope and content, and further agrees that Employee's experience and capabilities are such that, in the event that Employee's employment with Employer terminates, Employee will be able to earn a livelihood without breaching the terms of this Agreement.

121849 v. (WCS.General)                            3

**b.    No Waiver.**

The failure of Employer to enforce at any time or for any period of time any provision of this Agreement shall not be construed as a waiver of such provision or of the right of Employer thereafter to enforce such provision.

**c.    Entire Contract.**

This Agreement constitutes the entire contract between Employer and Employee with respect to the subject matter hereof and supersedes all prior agreements between Employer and Employee, whether oral or written, with respect to the subject matter hereof. No change, modification, or amendment of this Agreement shall be of any effect unless signed by the President or Vice President of Employer.

**d.    Governing Law.**

This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of Maryland, without regard to that State's conflicts-of-laws rules.

**e.    Severability.**

Employee agrees that the provisions of this Agreement are fair and reasonable in light of all of the facts and circumstances of the relationship between Employee and Employer. Employee agrees that, in the event a court should decline to enforce part or all of any provision of this Agreement, that provision shall be deemed to be modified to restrict Employee's competition or other conduct, as the case may be, to the maximum extent which the court shall find enforceable and legally permissible.

**f.    No Right of Setoff.**

The provisions of this Agreement shall be enforceable notwithstanding the existence of any claim of Employee against Employer, whether predicated on this Agreement or otherwise. In the event that Employer asserts a claim against Employee arising out of this Agreement, Employee shall have no right of setoff and/or recoupment based on any claim Employee may assert or wish to assert against Employer.

**g.    Breach or Threatened Breach.**

Employee's obligations under this Agreement shall survive the termination of Employee's employment with Employer. Employee agrees that any breach or threatened breach of the provisions of any part of this Agreement will cause irreparable injury and incalculable harm to Employer, and Employer shall, accordingly, be entitled to injunctive and other equitable relief for such breach or threatened breach, and/or to prevent a breach or threatened breach. Employee further agrees that resort by Employer to such injunctive or other equitable relief shall not be deemed a waiver of or limitation on any other right or remedy which Employer may have with respect to such breach or threatened breach, at law or in equity (including the right to seek and recover damages). Employee also agrees that, if Employee shall violate or breach any of the provisions of this Agreement, Employer shall be entitled to an accounting and repayment of all profits and compensation, commissions, or benefits which Employee directly or indirectly has realized and/or may realize as a result of, growing out of, or in connection with any such violation or breach and to recover damages resulting from said violation or breach; such remedy shall be in addition to and not in limitation of any injunctive or other rights or remedies to which Employer is or may be entitled at law or in equity. In the event that Employer decides to exercise rights under this Agreement, Employee shall be responsible for (and Employer shall be entitled to recover from Employee) any and all expenses incurred by Employer in enforcing such rights, including court costs, expert witness fees, and reasonable attorneys fees.

**h.**    **Preservation of Common Law Duties.**

Nothing in this Agreement shall limit, reduce, or waive any duties which Employee would or may owe to Employer under the common law.

**i.**    **Employer's Successors and Assigns.**

This Agreement shall inure to the benefit of Employer's and its successors and assigns.

**j.**    **"At-will" Employment.**

Employee understands and agrees that Employee's employment with Employer is "at-will," and that Employer or Employee shall have the right to terminate Employee's employment at any time, with or without cause, for any reason or for no reason.

*I HAVE READ THE PROVISIONS OF THIS AGREEMENT AND, IN FULL UNDERSTANDING OF THEM, INDICATE MY ASSENT TO THIS AGREEMENT BY MY SIGNATURE BELOW.*

1/16/12
Date

_David Bates_
Employee's Signature

_David Bates_
Employee's Printed Name

### AGREEMENT

In consideration of being provided employment and/or continued employment by EM Consulting Group, Inc., trading as Helion Automotive Technologies (hereafter "Employer"), _Marc Bigrosak_ (hereafter "Employee") agrees as follows:

**1.      Definitions.**

**a.      Person.**

The term "person," as used in this Agreement, shall mean any individual, any government entity, any business entity (including without limitation any corporation, partnership, joint venture, or limited liability company), and any other entity.

**b.      Competitive Products or Services.**

The term "competitive products or services" shall mean (i) technical support services for computer or information technology systems and/or (ii) services or products which are the same as or similar to products or services offered by Employer at the time of execution of this Agreement or at any time during Employee's employment with Employer.

**c.      Competitive Business.**

The term "competitive business" shall mean any business which offers or sells competitive products or services.

**d.      Employer-Related Contact.**

The term "Employer-related contact" shall mean any client or customer of Employer or other person with whom Employee had or has had personal contact, as an employee of Employer, in connection with performance of services or attempts to sell products or services.

**2.      Confidential Information.**

**a.      Definition.**

The following shall be considered Confidential Information:

(i)      All information relating to each client, customer, vendor, licensor, licensee, or party transacting business with Employer (such as, but not limited to, information relating to business affairs, finances, properties, methods of operation, hardware or software requirements, needs for technical support services or other products or services, and other data and material).

(ii)      All information relating to each record, file, document, memorandum, software diagram, flowchart, product or service plan, financial statement, report, price list (for services and/or products), marketing and/or business strategy/plan, client/customer list, list of prospective clients/customers, contact list, or proposal or quotation procedure relating to the business of Employer.

(iii)      All information relating to research owned or produced by Employer or any client, customer, supplier, or business partner of Employer.

(iv)    All information relating to each invention, trade secret, work of authorship, development, design, device, or activity that relates in any manner to Employer's business.

(v)    All information with which Employee may become familiar as an employee of Employer.

### b.    Non-disclosure.

Except to the extent necessary to perform the duties of employment with Employer, Employee shall not, at any time during or after Employee's employment with Employer, use or disclose, to any person, any Confidential Information, or permit any person to examine and/or make copies of any document or material which contains or is derived from Confidential Information. Employee shall promptly advise Employer in writing if Employee learns of any unauthorized use or disclosure of Confidential Information by any current or former employee of Employer or any other person.

### c.    Return of Confidential Information, Etc..

Upon Employer's request, and in any event upon termination of employment, Employee shall turn over to Employer all documents, papers, and other material in Employee's possession, custody, or control which may contain or be derived from Confidential Information, together with all documents, materials, notes, or other work product relating to Employer.

### 3.    Non-competition, Non-solicitation, Etc.

Employee agrees that, during Employee's employment with Employer, Employee shall not, directly or indirectly, as an employee, representative, salesperson, owner, independent contractor, or in any other capacity, participate in, work for, act for or in behalf of, or have any direct or indirect interest in, any competitive business.

Employee further agrees that, during Employee's employment and for a period of eighteen (18) months following termination of said employment (and regardless of the reason for termination of said employment), Employee shall not, at any time, directly or indirectly, as an employee, representative, salesperson, owner, independent contractor, or in any other capacity:

(i)    Solicit for employment (as an employee, independent contract, representative, or agent), with or by some person other than Employer, any person who has been an employee or representative of Employer at any time during the eighteen (18) months preceding and/or the eighteen (18) months following said termination.

(ii)    Solicit, in connection with attempts to sell competitive products or services, any person that is an Employer-related contact or has purchased products or services from Employer at any time during the eighteen (18) months preceding and/or the eighteen (18) months following said termination.

(iii)    Solicit, in connection with attempts to sell competitive products or services, any person to whom Employer has attempted to sell products or services during the eighteen (18) months preceding said termination.

(iv)    Sell or participate in efforts to sell competitive products or services to any person that is an Employer-related contact or has purchased products or services from Employer within the eighteen (18)

months preceding and/or the eighteen (18) months following said termination.

(v)      Accept employment with, or perform work for, any person that is an Employer-related contact or that, as a client or customer of Employer or in any other capacity, has purchased products or services from Employer at any time during the eighteen (18) months preceding or the eighteen (18) months following said termination, if such employment or work involves or would involve performance of technical support services for any computer or information technology system and/or providing services which are the same as or similar to services offered by Employer at the time of execution of this Agreement or at any time during Employee's employment.

(vi)      Attempt to induce any vendor or supplier of Employer to discontinue, reduce, or restrict (in size, scope, or volume), its business relationship with Employer.

Employee also agrees that, during the eighteen (18) months following termination of Employee's employment (and regardless of the reason for termination of said employment), Employee shall, prior to either entering into any agreement to participate in, work for, act for or in behalf of, or acquire or have any direct or indirect interest in, any competitive business and/or becoming an owner of any competitive business or other business, (i) inform Employer of Employee's plans to enter into such agreement and/or become an owner of said business, as the case may be, and (ii) communicate to the management of said business the existence and terms of this Agreement.

Employee also agrees that all of the eighteen (18) month periods referenced in this section 3 shall be extended by any amount of time that Employee is in violation of any portion of this section 3.

**4.      Assignment of Rights.**

Employee shall have no proprietary interest in work product developed by Employee during the course of Employee's employment with Employer and Employee agrees that such work product is work made for hire and that Employer shall have all proprietary rights in such work product, including without limitation all patent, copyright, and trade secret rights inherent therein and appurtenant thereto. Employee hereby assigns and agrees to assign to Employer and its successors, assigns, or nominees all right, title, and interest of Employee in such work product and any materials (including without limitation developments, designs, inventions, improvements, trade secrets, trademarks, algorithms, computer routines, programs, copyrightable subject matter, or proprietary information) which Employee may make or conceive, solely or jointly, (a) during the course of Employee's employment with Employer, (b) using time, materials, facilities, or resources of Employer, or (c) based on a suggestion or task given or assigned to Employee in the course of Employee's employment with Employer. Employee shall execute and deliver all such instruments or papers (including without limitation applications for issuances, renewals, extensions, or reissuances of patents, trademark registrations, or copyright registrations) as may be necessary to vest title to such work product and materials in Employer, its successors, assigns, or nominees.

**5.      General Provisions.**

**a.      Reasonableness of Agreement.**

Employee agrees that the covenants contained herein are necessary for the protection of Employer's legitimate business interests and are reasonable in scope and content, and further agrees that Employee's experience and capabilities are such that, in the event that Employee's employment with Employer terminates, Employee will be able to earn a livelihood without breaching the terms of this Agreement.

121849 v. (WCS General)                3

b.    *No Waiver.*

The failure of Employer to enforce at any time or for any period of time any provision of this Agreement shall not be construed as a waiver of such provision or of the right of Employer thereafter to enforce such provision.

c.    *Entire Contract.*

This Agreement constitutes the entire contract between Employer and Employee with respect to the subject matter hereof and supersedes all prior agreements between Employer and Employee, whether oral or written, with respect to the subject matter hereof. No change, modification, or amendment of this Agreement shall be of any effect unless signed by the President or Vice President of Employer.

d.    *Governing Law.*

This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of Maryland, without regard to that State's conflicts-of-laws rules.

e.    *Severability.*

Employee agrees that the provisions of this Agreement are fair and reasonable in light of all of the facts and circumstances of the relationship between Employee and Employer. Employee agrees that, in the event a court should decline to enforce part or all of any provision of this Agreement, that provision shall be deemed to be modified to restrict Employee's competition or other conduct, as the case may be, to the maximum extent which the court shall find enforceable and legally permissible.

f.    *No Right of Setoff.*

The provisions of this Agreement shall be enforceable notwithstanding the existence of any claim of Employee against Employer, whether predicated on this Agreement or otherwise. In the event that Employer asserts a claim against Employee arising out of this Agreement, Employee shall have no right of setoff and/or recoupment based on any claim Employee may assert or wish to assert against Employer.

g.    *Breach or Threatened Breach.*

Employee's obligations under this Agreement shall survive the termination of Employee's employment with Employer. Employee agrees that any breach or threatened breach of the provisions of any part of this Agreement will cause irreparable injury and incalculable harm to Employer, and Employer shall, accordingly, be entitled to injunctive and other equitable relief for such breach or threatened breach, and/or to prevent a breach or threatened breach. Employer further agrees that resort by Employer to such injunctive or other equitable relief shall not be deemed a waiver of or limitation on any other right or remedy which Employer may have with respect to such breach or threatened breach, at law or in equity (including the right to seek and recover damages). Employee also agrees that, if Employee shall violate or breach any of the provisions of this Agreement, Employer shall be entitled to an accounting and repayment of all profits and compensation, commissions, or benefits which Employee directly or indirectly has realized and/or may realize as a result of, growing out of, or in connection with any such violation or breach and to recover damages resulting from said violation or breach; such remedy shall be in addition to and not in limitation of any injunctive or other rights or remedies to which Employer is or may be entitled at law or in equity. In the event that Employer decides to exercise rights under this Agreement, Employee shall be responsible for (and Employer shall be entitled to recover from Employee) any and all expenses incurred by Employer in enforcing such rights, including court costs, expert witness fees, and reasonable attorneys fees.

h.    **Preservation of Common Law Duties.**

Nothing in this Agreement shall limit, reduce, or waive any duties which Employee would or may owe to Employer under the common law.

i.    **Employer's Successors and Assigns.**

This Agreement shall inure to the benefit of Employer's and its successors and assigns.

j.    **"At-will" Employment.**

Employee understands and agrees that Employee's employment with Employer is "at-will," and that Employer or Employee shall have the right to terminate Employee's employment at any time, with or without cause, for any reason or for no reason.

*I HAVE READ THE PROVISIONS OF THIS AGREEMENT AND, IN FULL UNDERSTANDING OF THEM, INDICATE MY ASSENT TO THIS AGREEMENT BY MY SIGNATURE BELOW.*

8-27-13
_____
Date

_____
Employee's Signature

Marc Blazejak
_____
Employee's Printed Name

## AGREEMENT

In consideration of being provided employment and/or continued employment by EM Consulting Group, Inc., trading as Helion Automotive Technologies (hereafter "Employer"), *Daniel Dausch* (hereafter "Employee") agrees as follows:

**1.    Definitions.**

**a.    Person.**

The term "person," as used in this Agreement, shall mean any individual, any government entity, any business entity (including without limitation any corporation, partnership, joint venture, or limited liability company), and any other entity.

**b.    Competitive Products or Services.**

The term "competitive products or services" shall mean (i) technical support services for computer or information technology systems and/or (ii) services or products which are the same as or similar to products or services offered by Employer at the time of execution of this Agreement or at any time during Employee's employment with Employer.

**c.    Competitive Business.**

The term "competitive business" shall mean any business which offers or sells competitive products or services.

**d.    Employer-Related Contact.**

The term "Employer-related contact" shall mean any client or customer of Employer or other person with whom Employee had or has had personal contact, as an employee of Employer, in connection with performance of services or attempts to sell products or services.

**2.    Confidential Information.**

**a.    Definition.**

The following shall be considered Confidential Information:

    (i)    All information relating to each client, customer, vendor, licensor, licensee, or party transacting business with Employer (such as, but not limited to, information relating to business affairs, finances, properties, methods of operation, hardware or software requirements, needs for technical support services or other products or services, and other data and material).

    (ii)    All information relating to each record, file, document, memorandum, software diagram, flowchart, product or service plan, financial statement, report, price list (for services and/or products), marketing and/or business strategy/plan, client/customer list, list of prospective clients/customers, contact list, or proposal or quotation procedure relating to the business of Employer.

    (iii)    All information relating to research owned or produced by Employer or any client, customer, supplier, or business partner of Employer.

(iv)    All information relating to each invention, trade secret, work of authorship, development, design, device, or activity that relates in any manner to Employer's business.

(v)    All information with which Employee may become familiar as an employee of Employer.

**b.    Non-disclosure.**

Except to the extent necessary to perform the duties of employment with Employer, Employee shall not, at any time during or after Employee's employment with Employer, use or disclose, to any person, any Confidential Information, or permit any person to examine and/or make copies of any document or material which contains or is derived from Confidential Information. Employee shall promptly advise Employer in writing if Employee learns of any unauthorized use or disclosure of Confidential Information by any current or former employee of Employer or any other person.

**c.    Return of Confidential Information, Etc..**

Upon Employer's request, and in any event upon termination of employment, Employee shall turn over to Employer all documents, papers, and other material in Employee's possession, custody, or control which may contain or be derived from Confidential Information, together with all documents, materials, notes, or other work product relating to Employer.

**3.    Non-competition, Non-solicitation, Etc.**

Employee agrees that, during Employee's employment with Employer, Employee shall not, directly or indirectly, as an employee, representative, salesperson, owner, independent contractor, or in any other capacity, participate in, work for, act for or in behalf of, or have any direct or indirect interest in, any competitive business.

Employee further agrees that, during Employee's employment and for a period of eighteen (18) months following termination of said employment (and regardless of the reason for termination of said employment), Employee shall not, at any time, directly or indirectly, as an employee, representative, salesperson, owner, independent contractor, or in any other capacity:

(i)    Solicit for employment (as an employee, independent contract, representative, or agent), with or by some person other than Employer, any person who has been an employee or representative of Employer at any time during the eighteen (18) months preceding and/or the eighteen (18) months following said termination.

(ii)    Solicit, in connection with attempts to sell competitive products or services, any person that is an Employer-related contact or has purchased products or services from Employer at any time during the eighteen (18) months preceding and/or the eighteen (18) months following said termination.

(iii)    Solicit, in connection with attempts to sell competitive products or services, any person to whom Employer has attempted to sell products or services during the eighteen (18) months preceding said termination.

(iv)    Sell or participate in efforts to sell competitive products or services to any person that is an Employer-related contact or has purchased products or services from Employer within the eighteen (18)

months preceding and/or the eighteen (1 ) months following said termination.

(v)    Accept employment with, or perform work for, any person that is an Employer-related contact or that, as a client or customer of Employer or in any other capacity, has purchased products or services from Employer at any time during the eighteen (1 ) months preceding or the eighteen (1 ) months following said termination, if such employment or work involves or would involve performance of technical support services for any computer or information technology system and/or providing services which are the same as or similar to services offered by Employer at the time of execution of this Agreement or at any time during Employee's employment.

(vi)    Attempt to induce any vendor or supplier of Employer to discontinue, reduce, or restrict (in size, scope, or volume), its business relationship with Employer.

Employee also agrees that, during the eighteen (1 ) months following termination of Employee's employment (and regardless of the reason for termination of said employment), Employee shall, prior to either entering into any agreement to participate in, work for, act for or in behalf of, or acquire or have any direct or indirect interest in, any competitive business and/or becoming an owner of any competitive business or other business, (i) inform Employer of Employee's plans to enter into such agreement and/or become an owner of said business, as the case may be, and (ii) communicate to the management of said business the existence and terms of this Agreement.

Employee also agrees that all of the eighteen (1 ) month periods referenced in this section 3 shall be extended by any amount of time that Employee is in violation of any portion of this section 3.

4.    **Assignment of Rights.**

Employee shall have no proprietary interest in work product developed by Employee during the course of Employee's employment with Employer and Employee agrees that such work product is work made for hire and that Employer shall have all proprietary rights in such work product, including without limitation all patent, copyright, and trade secret rights inherent therein and appurtenant thereto. Employee hereby assigns and agrees to assign to Employer and its successors, assigns, or nominees all right, title, and interest of Employee in such work product and any materials (including without limitation developments, designs, inventions, improvements, trade secrets, trademarks, algorithms, computer routines, programs, copyrightable subject matter, or proprietary information) which Employee may make or conceive, solely or jointly, (a) during the course of Employee's employment with Employer, (b) using time, materials, facilities, or resources of Employer, or (c) based on a suggestion or task given or assigned to Employee in the course of Employee's employment with Employer. Employee shall execute and deliver all such instruments or papers (including without limitation applications for issuances, renewals, extensions, or reissuances of patents, trademark registrations, or copyright registrations) as may be necessary to vest title to such work product and materials in Employer, its successors, assigns, or nominees.

5.    **General Provisions.**

a.    **Reasonableness of Agreement.**

Employee agrees that the covenants contained herein are necessary for the protection of Employer's legitimate business interests and are reasonable in scope and content, and further agrees that Employee's experience and capabilities are such that, in the event that Employee's employment with Employer terminates, Employee will be able to earn a livelihood without breaching the terms of this Agreement.

**b.    No Waiver.**

The failure of Employer to enforce at any time or for any period of time any provision of this Agreement shall not be construed as a waiver of such provision or of the right of Employer thereafter to enforce such provision.

**c.    Entire Contract.**

This Agreement constitutes the entire contract between Employer and Employee with respect to the subject matter hereof and supersedes all prior agreements between Employer and Employee, whether oral or written, with respect to the subject matter hereof. No change, modification, or amendment of this Agreement shall be of any effect unless signed by the President or Vice President of Employer.

**d.    Governing Law.**

This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of Maryland, without regard to that State's conflicts-of-laws rules.

**e.    Severability.**

Employee agrees that the provisions of this Agreement are fair and reasonable in light of all of the facts and circumstances of the relationship between Employee and Employer. Employee agrees that, in the event a court should decline to enforce part or all of any provision of this Agreement, that provision shall be deemed to be modified to restrict Employee's competition or other conduct, as the case may be, to the maximum extent which the court shall find enforceable and legally permissible.

**f.    No Right of Setoff.**

The provisions of this Agreement shall be enforceable notwithstanding the existence of any claim of Employee against Employer, whether predicated on this Agreement or otherwise. In the event that Employer asserts a claim against Employee arising out of this Agreement, Employee shall have no right of setoff and/or recoupment based on any claim Employee may assert or wish to assert against Employer.

**g.    Breach or Threatened Breach.**

Employee's obligations under this Agreement shall survive the termination of Employee's employment with Employer. Employee agrees that any breach or threatened breach of the provisions of any part of this Agreement will cause irreparable injury and incalculable harm to Employer, and Employer shall, accordingly, be entitled to injunctive and other equitable relief for such breach or threatened breach, and/or to prevent a breach or threatened breach. Employee further agrees that resort by Employer to such injunctive or other equitable relief shall not be deemed a waiver of or limitation on any other right or remedy which Employer may have with respect to such breach or threatened breach, at law or in equity (including the right to seek and recover damages). Employee also agrees that, if Employee shall violate or breach any of the provisions of this Agreement, Employer shall be entitled to an accounting and repayment of all profits and compensation, commissions, or benefits which Employee directly or indirectly has realized and/or may realize as a result of, growing out of, or in connection with any such violation or breach and to recover damages resulting from said violation or breach; such remedy shall be in addition to and not in limitation of any injunctive or other rights or remedies to which Employer is or may be entitled at law or in equity. In the event that Employer decides to exercise rights under this Agreement, Employee shall be responsible for (and Employer shall be entitled to recover from Employee) any and all expenses incurred by Employer in enforcing such rights, including court costs, expert witness fees, and reasonable attorneys fees.

**h.      Preservation of Common Law Duties.**

Nothing in this Agreement shall limit, reduce, or waive any duties which Employee would or may owe to Employer under the common law.

**i.      Employer's Successors and Assigns.**

This Agreement shall inure to the benefit of Employer's and its successors and assigns.

**j.      "At-will" Employment.**

Employee understands and agrees that Employee's employment with Employer is "at-will," and that Employer or Employee shall have the right to terminate Employee's employment at any time, with or without cause, for any reason or for no reason.

*I HAVE READ THE PROVISIONS OF THIS AGREEMENT AND, IN FULL UNDERSTANDING OF THEM, INDICATE MY ASSENT TO THIS AGREEMENT BY MY SIGNATURE BELOW.*

1/4/17
Date

Employee's Signature

Daniel Dausch
Employee's Printed Name

## AGREEMENT

In consideration of being provided employment and/or continued employment by EM Consulting Group, Inc., trading as Helion Automotive Technologies (hereafter "Employer"), _James Tomassoni_ (hereafter "Employee") agrees as follows:

**1.    Definitions.**

**a.    Person.**

The term "person," as used in this Agreement, shall mean any individual, any government entity, any business entity (including without limitation any corporation, partnership, joint venture, or limited liability company), and any other entity.

**b.    Competitive Products or Services.**

The term "competitive products or services" shall mean (i) technical support services for computer or information technology systems and/or (ii) services or products which are the same as or similar to products or services offered by Employer at the time of execution of this Agreement or at any time during Employee's employment with Employer.

**c.    Competitive Business.**

The term "competitive business" shall mean any business which offers or sells competitive products or services.

**d.    Employer-Related Contact.**

The term "Employer-related contact" shall mean any client or customer of Employer or other person with whom Employee had or has had personal contact, as an employee of Employer, in connection with performance of services or attempts to sell products or services.

**2.    Confidential Information.**

**a.    Definition.**

The following shall be considered Confidential Information:

(i)    All information relating to each client, customer, vendor, licensor, licensee, or party transacting business with Employer (such as, but not limited to, information relating to business affairs, finances, properties, methods of operation, hardware or software requirements, needs for technical support services or other products or services, and other data and material).

(ii)    All information relating to each record, file, document, memorandum, software diagram, flowchart, product or service plan, financial statement, report, price list (for services and/or products), marketing and/or business strategy/plan, client/customer list, list of prospective clients/customers, contact list, or proposal or quotation procedure relating to the business of Employer.

(iii)    All information relating to research owned or produced by Employer or any client, customer, supplier, or business partner of Employer.

(iv)    All information relating to each invention, trade secret, work of authorship, development, design, device, or activity that relates in any manner to Employer's business.

(v)    All information with which Employee may become familiar as an employee of Employer.

**b.    Non-disclosure.**

Except to the extent necessary to perform the duties of employment with Employer, Employee shall not, at any time during or after Employee's employment with Employer, use or disclose, to any person, any Confidential Information, or permit any person to examine and/or make copies of any document or material which contains or is derived from Confidential Information. Employee shall promptly advise Employer in writing if Employee learns of any unauthorized use or disclosure of Confidential Information by any current or former employee of Employer or any other person.

**c.    Return of Confidential Information, Etc..**

Upon Employer's request, and in any event upon termination of employment, Employee shall turn over to Employer all documents, papers, and other material in Employee's possession, custody, or control which may contain or be derived from Confidential Information, together with all documents, materials, notes, or other work product relating to Employer.

**3.    Non-competition, Non-solicitation, Etc.**

Employee agrees that, during Employee's employment with Employer, Employee shall not, directly or indirectly, as an employee, representative, salesperson, owner, independent contractor, or in any other capacity, participate in, work for, act for or in behalf of, or have any direct or indirect interest in, any competitive business.

Employee further agrees that, during Employee's employment and for a period of eighteen (18) months following termination of said employment (and regardless of the reason for termination of said employment), Employee shall not, at any time, directly or indirectly, as an employee, representative, salesperson, owner, independent contractor, or in any other capacity:

(i)    Solicit for employment (as an employee, independent contract, representative, or agent), with or by some person other than Employer, any person who has been an employee or representative of Employer at any time during the eighteen (18) months preceding and/or the eighteen (18) months following said termination.

(ii)    Solicit, in connection with attempts to sell competitive products or services, any person that is an Employer-related contact or has purchased products or services from Employer at any time during the eighteen (18) months preceding and/or the eighteen (18) months following said termination.

(iii)    Solicit, in connection with attempts to sell competitive products or services, any person to whom Employer has attempted to sell products or services during the eighteen (18) months preceding said termination.

(iv)    Sell or participate in efforts to sell competitive products or services to any person that is an Employer-related contact or has purchased products or services from Employer within the eighteen (18)

months preceding and/or the eighteen (18) months following said termination.

(v)    Accept employment with, or perform work for, any person that is an Employer-related contact or that, as a client or customer of Employer or in any other capacity, has purchased products or services from Employer at any time during the eighteen (18) months preceding or the eighteen (18) months following said termination, if such employment or work involves or would involve performance of technical support services for any computer or information technology system and/or providing services which are the same as or similar to services offered by Employer at the time of execution of this Agreement or at any time during Employee's employment.

(vi)    Attempt to induce any vendor or supplier of Employer to discontinue, reduce, or restrict (in size, scope, or volume), its business relationship with Employer.

Employee also agrees that, during the eighteen (18) months following termination of Employee's employment (and regardless of the reason for termination of said employment), Employee shall, prior to either entering into any agreement to participate in, work for, act for or in behalf of, or acquire or have any direct or indirect interest in, any competitive business and/or becoming an owner of any competitive business or other business, (i) inform Employer of Employee's plans to enter into such agreement and/or become an owner of said business, as the case may be, and (ii) communicate to the management of said business the existence and terms of this Agreement.

Employee also agrees that all of the eighteen (18) month periods referenced in this section 3 shall be extended by any amount of time that Employee is in violation of any portion of this section 3.

4.    **Assignment of Rights.**

Employee shall have no proprietary interest in work product developed by Employee during the course of Employee's employment with Employer and Employee agrees that such work product is work made for hire and that Employer shall have all proprietary rights in such work product, including without limitation all patent, copyright, and trade secret rights inherent therein and appurtenant thereto. Employee hereby assigns and agrees to assign to Employer and its successors, assigns, or nominees all right, title, and interest of Employee in such work product and any materials (including without limitation developments, designs, inventions, improvements, trade secrets, trademarks, algorithms, computer routines, programs, copyrightable subject matter, or proprietary information) which Employee may make or conceive, solely or jointly, (a) during the course of Employee's employment with Employer, (b) using time, materials, facilities, or resources of Employer, or (c) based on a suggestion or task given or assigned to Employee in the course of Employee's employment with Employer. Employee shall execute and deliver all such instruments or papers (including without limitation applications for issuances, renewals, extensions, or reissuances of patents, trademark registrations, or copyright registrations) as may be necessary to vest title to such work product and materials in Employer, its successors, assigns, or nominees.

5.    **General Provisions.**

a.    **Reasonableness of Agreement.**

Employee agrees that the covenants contained herein are necessary for the protection of Employer's legitimate business interests and are reasonable in scope and content, and further agrees that Employee's experience and capabilities are such that, in the event that Employee's employment with Employer terminates, Employee will be able to earn a livelihood without breaching the terms of this Agreement.

b.    *No Waiver.*

The failure of Employer to enforce at any time or for any period of time any provision of this Agreement shall not be construed as a waiver of such provision or of the right of Employer thereafter to enforce such provision.

c.    *Entire Contract.*

This Agreement constitutes the entire contract between Employer and Employee with respect to the subject matter hereof and supersedes all prior agreements between Employee and Employee, whether oral or written, with respect to the subject matter hereof. No change, modification, or amendment of this Agreement shall be of any effect unless signed by the President or Vice President of Employer.

d.    *Governing Law.*

This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of Maryland, without regard to that State's conflicts-of-laws rules.

e.    *Severability.*

Employee agrees that the provisions of this Agreement are fair and reasonable in light of all of the facts and circumstances of the relationship between Employee and Employer. Employee agrees that, in the event a court should decline to enforce part or all of any provision of this Agreement, that provision shall be deemed to be modified to restrict Employee's competition or other conduct, as the case may be, to the maximum extent which the court shall find enforceable and legally permissible.

f.    *No Right of Setoff.*

The provisions of this Agreement shall be enforceable notwithstanding the existence of any claim of Employee against Employer, whether predicated on this Agreement or otherwise. In the event that Employer asserts a claim against Employee arising out of this Agreement, Employee shall have no right of setoff and/or recoupment based on any claim Employee may assert or wish to assert against Employer.

g.    *Breach or Threatened Breach.*

Employee's obligations under this Agreement shall survive the termination of Employee's employment with Employer. Employee agrees that any breach or threatened breach of the provisions of any part of this Agreement will cause irreparable injury and incalculable harm to Employer, and Employer shall, accordingly, be entitled to injunctive and other equitable relief for such breach or threatened breach, and/or to prevent a breach or threatened breach. Employee further agrees that resort by Employer to such injunctive or other equitable relief shall not be deemed a waiver of or limitation on any other right or remedy which Employer may have with respect to such breach or threatened breach, at law or in equity (including the right to seek and recover damages). Employee also agrees that, if Employee shall violate or breach any of the provisions of this Agreement, Employer shall be entitled to an accounting and repayment of all profits and compensation, commissions, or benefits which Employee directly or indirectly has realized and/or may realize as a result of, growing out of, or in connection with any such violation or breach and to recover damages resulting from said violation or breach; such remedy shall be in addition to and not in limitation of any injunctive or other rights or remedies to which Employer is or may be entitled at law or in equity. In the event that Employer decides to exercise rights under this Agreement, Employee shall be responsible for (and Employer shall be entitled to recover from Employee) any and all expenses incurred by Employer in enforcing such rights, including court costs, expert witness fees, and reasonable attorneys fees.

   *h.*    **Preservation of Common Law Duties.**

Nothing in this Agreement shall limit, reduce, or waive any duties which Employee would or may owe to Employer under the common law.

   *i.*    **Employer's Successors and Assigns.**

This Agreement shall inure to the benefit of Employer's and its successors and assigns.

   *j.*    **"At-will" Employment.**

Employee understands and agrees that Employee's employment with Employer is "at-will," and that Employer or Employee shall have the right to terminate Employee's employment at any time, with or without cause, for any reason or for no reason.

*I HAVE READ THE PROVISIONS OF THIS AGREEMENT AND, IN FULL UNDERSTANDING OF THEM, INDICATE MY ASSENT TO THIS AGREEMENT BY MY SIGNATURE BELOW.*

June 26, 2013
Date

Employee's Signature

James Tomasson
Employee's Printed Name

### *AGREEMENT*

In consideration of being provided employment and/or continued employment by EM Consulting Group, Inc., trading as Helion Automotive Technologies (hereafter "Employer"), STEVEN WEBSTER JR. (hereafter "Employee") agrees as follows:

**1.    *Definitions.***

**a.    *Person.***

The term "person," as used in this Agreement, shall mean any individual, any government entity, any business entity (including without limitation any corporation, partnership, joint venture, or limited liability company), and any other entity.

**b.    *Competitive Products or Services.***

The term "competitive products or services" shall mean (i) technical support services for computer or information technology systems and/or (ii) services or products which are the same as or similar to products or services offered by Employer at the time of execution of this Agreement or at any time during Employee's employment with Employer.

**c.    *Competitive Business.***

The term "competitive business" shall mean any business which offers or sells competitive products or services.

**d.    *Employer-Related Contact.***

The term "Employer-related contact" shall mean any client or customer of Employer or other person with whom Employee had or has had personal contact, as an employee of Employer, in connection with performance of services or attempts to sell products or services.

**2.    *Confidential Information.***

**a.    *Definition.***

The following shall be considered Confidential Information:

(i)    All information relating to each client, customer, vendor, licensor, licensee, or party transacting business with Employer (such as, but not limited to, information relating to business affairs, finances, properties, methods of operation, hardware or software requirements, needs for technical support services or other products or services, and other data and material).

(ii)    All information relating to each record, file, document, memorandum, software diagram, flowchart, product or service plan, financial statement, report, price list (for services and/or products), marketing and/or business strategy/plan, client/customer list, list of prospective clients/customers, contact list, or proposal or quotation procedure relating to the business of Employer.

(iii)    All information relating to research owned or produced by Employer or any client, customer, supplier, or business partner of Employer.

(iv)    All information relating to each invention, trade secret, work of authorship, development, design, device, or activity that relates in any manner to Employer's business.

(v)    All information with which Employee may become familiar as an employee of Employer.

**b.    Non-disclosure.**

Except to the extent necessary to perform the duties of employment with Employer, Employee shall not, at any time during or after Employee's employment with Employer, use or disclose, to any person, any Confidential Information, or permit any person to examine and/or make copies of any document or material which contains or is derived from Confidential Information. Employee shall promptly advise Employer in writing if Employee learns of any unauthorized use or disclosure of Confidential Information by any current or former employee of Employer or any other person.

**c.    Return of Confidential Information, Etc..**

Upon Employer's request, and in any event upon termination of employment, Employee shall turn over to Employer all documents, papers, and other material in Employee's possession, custody, or control which may contain or be derived from Confidential Information, together with all documents, materials, notes, or other work product relating to Employer.

**3.    Non-competition, Non-solicitation, Etc.**

Employee agrees that, during Employee's employment with Employer, Employee shall not, directly or indirectly, as an employee, representative, salesperson, owner, independent contractor, or in any other capacity, participate in, work for, act for or in behalf of, or have any direct or indirect interest in, any competitive business.

Employee further agrees that, during Employee's employment and for a period of eighteen (18) months following termination of said employment (and regardless of the reason for termination of said employment), Employee shall not, at any time, directly or indirectly, as an employee, representative, salesperson, owner, independent contractor, or in any other capacity:

(i)    Solicit for employment (as an employee, independent contract, representative, or agent), with or by some person other than Employer, any person who has been an employee or representative of Employer at any time during the eighteen (18) months preceding and/or the eighteen (18) months following said termination.

(ii)    Solicit, in connection with attempts to sell competitive products or services, any person that is an Employer-related contact or has purchased products or services from Employer at any time during the eighteen (18) months preceding and/or the eighteen (18) months following said termination.

(iii)    Solicit, in connection with attempts to sell competitive products or services, any person to whom Employer has attempted to sell products or services during the eighteen (18) months preceding said termination.

(iv)    Sell or participate in efforts to sell competitive products or services to any person that is an Employer-related contact or has purchased products or services from Employer within the eighteen (18)

months preceding and/or the eighteen (18) months following said termination.

(v)     Accept employment with, or perform work for, any person that is an Employer-related contact or that, as a client or customer of Employer or in any other capacity, has purchased products or services from Employer at any time during the eighteen (18) months preceding or the eighteen (18) months following said termination, if such employment or work involves or would involve performance of technical support services for any computer or information technology system and/or providing services which are the same as or similar to services offered by Employer at the time of execution of this Agreement or at any time during Employee's employment.

(vi)    Attempt to induce any vendor or supplier of Employer to discontinue, reduce, or restrict (in size, scope, or volume), its business relationship with Employer.

Employee also agrees that, during the eighteen (18) months following termination of Employee's employment (and regardless of the reason for termination of said employment), Employee shall, prior to either entering into any agreement to participate in, work for, act for or in behalf of, or acquire or have any direct or indirect interest in, any competitive business and/or becoming an owner of any competitive business or other business, (i) inform Employer of Employee's plans to enter into such agreement and/or become an owner of said business, as the case may be, and (ii) communicate to the management of said business the existence and terms of this Agreement.

Employee also agrees that all of the eighteen (18) month periods referenced in this section 3 shall be extended by any amount of time that Employee is in violation of any portion of this section 3.

4.      **Assignment of Rights.**

Employee shall have no proprietary interest in work product developed by Employee during the course of Employee's employment with Employer and Employee agrees that such work product is work made for hire and that Employer shall have all proprietary rights in such work product, including without limitation all patent, copyright, and trade secret rights inherent therein and appurtenant thereto. Employee hereby assigns and agrees to assign to Employer and its successors, assigns, or nominees all right, title, and interest of Employee in such work product and any materials (including without limitation developments, designs, inventions, improvements, trade secrets, trademarks, algorithms, computer routines, programs, copyrightable subject matter, or proprietary information) which Employee may make or conceive, solely or jointly, (a) during the course of Employee's employment with Employer, (b) using time, materials, facilities, or resources of Employer, or (c) based on a suggestion or task given or assigned to Employee in the course of Employee's employment with Employer. Employee shall execute and deliver all such instruments or papers (including without limitation applications for issuances, renewals, extensions, or reissuances of patents, trademark registrations, or copyright registrations) as may be necessary to vest title to such work product and materials in Employer, its successors, assigns, or nominees.

5.      **General Provisions.**

a.      **Reasonableness of Agreement.**

Employee agrees that the covenants contained herein are necessary for the protection of Employer's legitimate business interests and are reasonable in scope and content, and further agrees that Employee's experience and capabilities are such that, in the event that Employee's employment with Employer terminates, Employee will be able to earn a livelihood without breaching the terms of this Agreement.

**b.     No Waiver.**

The failure of Employer to enforce at any time or for any period of time any provision of this Agreement shall not be construed as a waiver of such provision or of the right of Employer thereafter to enforce such provision.

**c.     Entire Contract.**

This Agreement constitutes the entire contract between Employer and Employee with respect to the subject matter hereof and supersedes all prior agreements between Employer and Employee, whether oral or written, with respect to the subject matter hereof. No change, modification, or amendment of this Agreement shall be of any effect unless signed by the President or Vice President of Employer.

**d.     Governing Law.**

This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of Maryland, without regard to that State's conflicts-of-laws rules.

**e.     Severability.**

Employee agrees that the provisions of this Agreement are fair and reasonable in light of all of the facts and circumstances of the relationship between Employee and Employer. Employee agrees that, in the event a court should decline to enforce part or all of any provision of this Agreement, that provision shall be deemed to be modified to restrict Employee's competition or other conduct, as the case may be, to the maximum extent which the court shall find enforceable and legally permissible.

**f.     No Right of Setoff.**

The provisions of this Agreement shall be enforceable notwithstanding the existence of any claim of Employee against Employer, whether predicated on this Agreement or otherwise. In the event that Employer asserts a claim against Employee arising out of this Agreement, Employee shall have no right of setoff and/or recoupment based on any claim Employee may assert or wish to assert against Employer.

**g.     Breach or Threatened Breach.**

Employee's obligations under this Agreement shall survive the termination of Employee's employment with Employer. Employee agrees that any breach or threatened breach of the provisions of any part of this Agreement will cause irreparable injury and incalculable harm to Employer, and Employer shall, accordingly, be entitled to injunctive and other equitable relief for such breach or threatened breach, and/or to prevent a breach or threatened breach. Employee further agrees that resort by Employer to such injunctive or other equitable relief shall not be deemed a waiver of or limitation on any other right or remedy which Employer may have with respect to such breach or threatened breach, at law or in equity (including the right to seek and recover damages). Employee also agrees that, if Employee shall violate or breach any of the provisions of this Agreement, Employer shall be entitled to an accounting and repayment of all profits and compensation, commissions, or benefits which Employee directly or indirectly has realized and/or may realize as a result of, growing out of, or in connection with any such violation or breach and to recover damages resulting from said violation or breach; such remedy shall be in addition to and not in limitation of any injunctive or other rights or remedies to which Employer is or may be entitled at law or in equity. In the event that Employer decides to exercise rights under this Agreement, Employee shall be responsible for (and Employer shall be entitled to recover from Employee) any and all expenses incurred by Employer in enforcing such rights, including court costs, expert witness fees, and reasonable attorneys fees.

**h.    Preservation of Common Law Duties.**

Nothing in this Agreement shall limit, reduce, or waive any duties which Employee would or may owe to Employer under the common law.

**i.    Employer's Successors and Assigns.**

This Agreement shall inure to the benefit of Employer's and its successors and assigns.

**j.    "At-will" Employment.**

Employee understands and agrees that Employee's employment with Employer is "at-will," and that Employer or Employee shall have the right to terminate Employee's employment at any time, with or without cause, for any reason or for no reason.

*I HAVE READ THE PROVISIONS OF THIS AGREEMENT AND, IN FULL UNDERSTANDING OF THEM, INDICATE MY ASSENT TO THIS AGREEMENT BY MY SIGNATURE BELOW.*

3/3/2010
Date

Employee's Signature

STEVEN    WEBSTER    JR.
Employee's Printed Name

## *AGREEMENT*

In consideration of being provided employment and/or continued employment by EM Consulting Group, Inc., trading as Helion Automotive Technologies (hereafter "Employer"), GEORGE YASSA (hereafter "Employee") agrees as follows:

*1.       Definitions.*

*a.       Person.*

The term "person," as used in this Agreement, shall mean any individual, any government entity, any business entity (including without limitation any corporation, partnership, joint venture, or limited liability company), and any other entity.

*b.       Competitive Products or Services.*

The term "competitive products or services" shall mean (i) technical support services for computer or information technology systems and/or (ii) services or products which are the same as or similar to products or services offered by Employer at the time of execution of this Agreement or at any time during Employee's employment with Employer.

*c.       Competitive Business.*

The term "competitive business" shall mean any business which offers or sells competitive products or services.

*d.       Employer-Related Contact.*

The term "Employer-related contact" shall mean any client or customer of Employer or other person with whom Employee had or has had personal contact, as an employee of Employer, in connection with performance of services or attempts to sell products or services.

*2.       Confidential Information.*

*a.       Definition.*

The following shall be considered Confidential Information:

(i)       All information relating to each client, customer, vendor, licensor, licensee, or party transacting business with Employer (such as, but not limited to, information relating to business affairs, finances, properties, methods of operation, hardware or software requirements, needs for technical support services or other products or services, and other data and material).

(ii)      All information relating to each record, file, document, memorandum, software diagram, flowchart, product or service plan, financial statement, report, price list (for services and/or products), marketing and/or business strategy/plan, client/customer list, list of prospective clients/customers, contact list, or proposal or quotation procedure relating to the business of Employer.

(iii)     All information relating to research owned or produced by Employer or any client, customer, supplier, or business partner of Employer.

(iv)    All information relating to each invention, trade secret, work of authorship, development, design, device, or activity that relates in any manner to Employer's business.

(v)    All information with which Employee may become familiar as an employee of Employer.

**b.    Non-disclosure.**

Except to the extent necessary to perform the duties of employment with Employer, Employee shall not, at any time during or after Employee's employment with Employer, use or disclose, to any person, any Confidential Information, or permit any person to examine and/or make copies of any document or material which contains or is derived from Confidential Information. Employee shall promptly advise Employer in writing if Employee learns of any unauthorized use or disclosure of Confidential Information by any current or former employee of Employer or any other person.

**c.    Return of Confidential Information, Etc..**

Upon Employer's request, and in any event upon termination of employment, Employee shall turn over to Employer all documents, papers, and other material in Employee's possession, custody, or control which may contain or be derived from Confidential Information, together with all documents, materials, notes, or other work product relating to Employer.

**3.    Non-competition, Non-solicitation, Etc.**

Employee agrees that, during Employee's employment with Employer, Employee shall not, directly or indirectly, as an employee, representative, salesperson, owner, independent contractor, or in any other capacity, participate in, work for, act for or in behalf of, or have any direct or indirect interest in, any competitive business.

Employee further agrees that, during Employee's employment and for a period of eighteen (18) months following termination of said employment (and regardless of the reason for termination of said employment), Employee shall not, at any time, directly or indirectly, as an employee, representative, salesperson, owner, independent contractor, or in any other capacity:

(i)    Solicit for employment (as an employee, independent contract, representative, or agent), with or by some person other than Employer, any person who has been an employee or representative of Employer at any time during the eighteen (18) months preceding and/or the eighteen (18) months following said termination.

(ii)    Solicit, in connection with attempts to sell competitive products or services, any person that is an Employer-related contact or has purchased products or services from Employer at any time during the eighteen (18) months preceding and/or the eighteen (18) months following said termination.

(iii)    Solicit, in connection with attempts to sell competitive products or services, any person to whom Employer has attempted to sell products or services during the eighteen (18) months preceding said termination.

(iv)    Sell or participate in efforts to sell competitive products or services to any person that is an Employer-related contact or has purchased products or services from Employer within the eighteen (18)

months preceding and/or the eighteen (18) months following said termination.

(v)     Accept employment with, or perform work for, any person that is an Employer-related contact or that, as a client or customer of Employer or in any other capacity, has purchased products or services from Employer at any time during the eighteen (18) months preceding or the eighteen (18) months following said termination, if such employment or work involves or would involve performance of technical support services for any computer or information technology system and/or providing services which are the same as or similar to services offered by Employer at the time of execution of this Agreement or at any time during Employee's employment.

(vi)    Attempt to induce any vendor or supplier of Employer to discontinue, reduce, or restrict (in size, scope, or volume), its business relationship with Employer.

Employee also agrees that, during the eighteen (18) months following termination of Employee's employment (and regardless of the reason for termination of said employment), Employee shall, prior to either entering into any agreement to participate in, work for, act for or in behalf of, or acquire or have any direct or indirect interest in, any competitive business and/or becoming an owner of any competitive business or other business, (i) inform Employer of Employee's plans to enter into such agreement and/or become an owner of said business, as the case may be, and (ii) communicate to the management of said business the existence and terms of this Agreement.

Employee also agrees that all of the eighteen (18) month periods referenced in this section 3 shall be extended by any amount of time that Employee is in violation of any portion of this section 3.

4.      **Assignment of Rights.**

Employee shall have no proprietary interest in work product developed by Employee during the course of Employee's employment with Employer and Employee agrees that such work product is work made for hire and that Employer shall have all proprietary rights in such work product, including without limitation all patent, copyright, and trade secret rights inherent therein and appurtenant thereto. Employee hereby assigns and agrees to assign to Employer and its successors, assigns, or nominees all right, title, and interest of Employee in such work product and any materials (including without limitation developments, designs, inventions, improvements, trade secrets, trademarks, algorithms, computer routines, programs, copyrightable subject matter, or proprietary information) which Employee may make or conceive, solely or jointly, (a) during the course of Employee's employment with Employer, (b) using time, materials, facilities, or resources of Employer, or (c) based on a suggestion or task given or assigned to Employee in the course of Employee's employment with Employer. Employee shall execute and deliver all such instruments or papers (including without limitation applications for issuances, renewals, extensions, or reissuances of patents, trademark registrations, or copyright registrations) as may be necessary to vest title to such work product and materials in Employer, its successors, assigns, or nominees.

5.      **General Provisions.**

a.      **Reasonableness of Agreement.**

Employee agrees that the covenants contained herein are necessary for the protection of Employer's legitimate business interests and are reasonable in scope and content, and further agrees that Employee's experience and capabilities are such that, in the event that Employee's employment with Employer terminates, Employee will be able to earn a livelihood without breaching the terms of this Agreement.

### b.    No Waiver.

The failure of Employer to enforce at any time or for any period of time any provision of this Agreement shall not be construed as a waiver of such provision or of the right of Employer thereafter to enforce such provision.

### c.    Entire Contract.

This Agreement constitutes the entire contract between Employer and Employee with respect to the subject matter hereof and supersedes all prior agreements between Employer and Employee, whether oral or written, with respect to the subject matter hereof. No change, modification, or amendment of this Agreement shall be of any effect unless signed by the President or Vice President of Employer.

### d.    Governing Law.

This Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of Maryland, without regard to that State's conflicts-of-laws rules.

### e.    Severability.

Employee agrees that the provisions of this Agreement are fair and reasonable in light of all of the facts and circumstances of the relationship between Employee and Employer. Employee agrees that, in the event a court should decline to enforce part or all of any provision of this Agreement, that provision shall be deemed to be modified to restrict Employee's competition or other conduct, as the case may be, to the maximum extent which the court shall find enforceable and legally permissible.

### f.    No Right of Setoff.

The provisions of this Agreement shall be enforceable notwithstanding the existence of any claim of Employee against Employer, whether predicated on this Agreement or otherwise. In the event that Employer asserts a claim against Employee arising out of this Agreement, Employee shall have no right of setoff and/or recoupment based on any claim Employee may assert or wish to assert against Employer.

### g.    Breach or Threatened Breach.

Employee's obligations under this Agreement shall survive the termination of Employee's employment with Employer. Employee agrees that any breach or threatened breach of the provisions of any part of this Agreement will cause irreparable injury and incalculable harm to Employer, and Employer shall, accordingly, be entitled to injunctive and other equitable relief for such breach or threatened breach, and/or to prevent a breach or threatened breach. Employee further agrees that resort by Employer to such injunctive or other equitable relief shall not be deemed a waiver of or limitation on any other right or remedy which Employer may have with respect to such breach or threatened breach, at law or in equity (including the right to seek and recover damages). Employee also agrees that, if Employee shall violate or breach any of the provisions of this Agreement, Employer shall be entitled to an accounting and repayment of all profits and compensation, commissions, or benefits which Employee directly or indirectly has realized and/or may realize as a result of, growing out of, or in connection with any such violation or breach and to recover damages resulting from said violation or breach; such remedy shall be in addition to and not in limitation of any injunctive or other rights or remedies to which Employer is or may be entitled at law or in equity. In the event that Employer decides to exercise rights under this Agreement, Employee shall be responsible for (and Employer shall be entitled to recover from Employee) any and all expenses incurred by Employer in enforcing such rights, including court costs, expert witness fees, and reasonable attorneys fees.

h.    *Preservation of Common Law Duties.*

Nothing in this Agreement shall limit, reduce, or waive any duties which Employee would or may owe to Employer under the common law.

i.    *Employer's Successors and Assigns.*

This Agreement shall inure to the benefit of Employer's and its successors and assigns.

j.    *"At-will" Employment.*

Employee understands and agrees that Employee's employment with Employer is "at-will," and that Employer or Employee shall have the right to terminate Employee's employment at any time, with or without cause, for any reason or for no reason.

*I HAVE READ THE PROVISIONS OF THIS AGREEMENT AND, IN FULL UNDERSTANDING OF THEM, INDICATE MY ASSENT TO THIS AGREEMENT BY MY SIGNATURE BELOW.*

8/31/07
Date

Employee's Signature

GEORGE    YASSA
Employee's Printed Name